IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CV-11-D

| | | |
|---|---|---|
| GAIL MAJOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CAPE FEAR ACADEMY, | ) | |
| | ) | |
| Defendant. | ) | |

On January 16, 2019, Gail Major ("plaintiff" or "Major") filed a complaint against Cape Fear Academy ("defendant" or "CFA") alleging that CFA discriminated against her based on her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq. [D.E. 1]. On January 30, 2020, CFA moved for summary judgment and filed a memorandum in support, a statement of material facts, and an appendix [D.E. 20, 21, 22, 23]. On February 24, 2020, Major responded in opposition [D.E. 24].[1] On March 9, 2020, CFA replied [D.E. 25]. On March 17, 2020, Major improperly filed a sur-reply to CFA's reply [D.E. 26]. As explained below, the court grants CFA's motion for summary judgment.

I.

CFA is a private, PK3–12 college preparatory school in Wilmington, North Carolina. See Berger Dec. [D.E. 23-1] ¶ 2.[2] CFA and its faculty enter into one-year employment agreements. See

---

[1] Major filed her response on February 24, 2020, 25 days after service of CFA's motion for summary judgment. In accordance with this court's local civil rules, Major should have filed her response within 21 days. See Local Civ. R. 7.1(f)(1). Federal Rule of Civil Procedure 6(d) does not grant Major an additional three days. Cf. Fed. R. Civ. P. 6(d). Nonetheless, the court considers Major's response.

[2] Under Local Civil Rule 56.1, a party opposing a motion for summary judgment shall submit "a separate statement including a response to each numbered paragraph in the moving party's statement [of material facts]." Local Civ. R. 56.1(a)(2). "Each numbered paragraph in the moving

id. at ¶ 6. Each February, CFA issues new agreements to existing faculty for the following school year, requesting that faculty agree by mid-March if they plan to return. See id. The process gives CFA time to fill the position if the faculty member does not plan to return. See id. In August 2017, CFA hired Major for a one-year contract as a part-time second grade teacher assistant for the 2017–2018 school year. See Major Dep. [D.E. 23-4] 13–15. By March 2018, Major had signed a contract to return for the 2018–2019 school year. See Berger Dec. at ¶ 24; Major Dep. at 30; Boland Dec. [D.E. 23-2] ¶ 7.

On March 12, 2018, Nicole Smith, a third grade teacher, stated that she intended to leave CFA after the 2017–2018 school year. Berger Dec. at ¶ 7. On March 26, 2018, CFA emailed employees to notify them that a third grade teacher position for the 2018–2019 school year had opened. See id. at ¶ 9. CFA asked interested candidates to submit a resume and cover letter to Susan

---

party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Id. "Each statement by the movant or opponent ... must be followed by citation to evidence that would be admissible, as required by Federal Rule of Civil Procedure 56(c)." Local Civ. R. 56.1(a)(4). Under Rule 56(c), a party disputing a material fact must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Merely responding that a party "disputes" a material fact is insufficient under Rule 56 and Local Rule 56.1. See Howard v. Coll. of the Albermarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C.), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished).

Major's response to CFA's motion for summary judgement violates Local Rule 56.1 because it did not include a separate statement of material facts that responds to each numbered paragraph in CFA's statement of material facts. Cf. [D.E. 24, 26]. Thus, to the extent that Major does not oppose any statement of material fact by citing to particular parts of the record or showing that CFA cannot support its position based on evidence in the record, the court deems the material fact admitted. See Horton v. Methodist Univ., Inc., No. 5:16-CV-945-D, 2019 WL 320572, at *1 n.1 (E.D.N.C. Jan. 23, 2019) (unpublished), aff'd, No. 19-1174, 2019 WL 6998899 (4th Cir. Dec. 20, 2019) (per curiam) (unpublished); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard, 262 F. Supp. 3d at 329 n.1.

2

Boyer ("Boyer"), the Lower School Director for CFA. See id. Posting openings internally to give existing employees an opportunity to apply is a normal practice for CFA. See id. at ¶ 8.

Three people applied for the third grade teacher position. The applicants were: (1) Major; (2) Katherine McWane ("McWane"); and (3) Alexandra McLoota ("McLoota"). See id. at ¶¶ 10–11. Each applicant worked as a teacher assistant at CFA. See id. at ¶ 10; Major Dep. at 22. Major worked part-time, while McWane and McLoota worked full-time. See Berger Dec. at ¶ 11.

To evaluate the applicants, CFA formed a selection committee ("the committee") that included Boyer and three CFA teachers: Lauren McLean ("McLean"), Elizabeth Lallathin ("Lallathin"), and Gretchen Scoutelas ("Scoutelas"). See id. at ¶ 12. The committee observed each candidate conduct a lesson for students and interviewed them afterwards. See id. at ¶ 13. Major taught a reading lesson. See Major Dep. at 23. After observing Major, Scoutelas stated that Major "struggled with her lesson plan and had a difficult time staying organized, keeping the students on task and holding their attention." Scoutelas Dec. [D.E. 23-3] ¶ 7. Scoutelas noted that Major "also appeared to be very nervous when presenting her lesson plan." Id. Major admitted that, although she felt "very confident" at the beginning of the lesson, she "muddled through" and "had to regroup" when the children did not respond as expected to her lesson. Major Dep. at 23–24. In her own words, Major stated: "[I]t was okay. It wasn't great . . . ." Id. at 24. When asked how the lesson went on a scale of 1 to 10, Major stated: "If I were observing myself, I would say maybe a 5." Id.

After the lesson, the committee interviewed Major. See id. at 25. Major described the interview as "very lighthearted and nice." Id. The committee did not discuss the lesson with Major, instead focusing on "[Major] and [her] teaching and [her] philosophy." Id. Major admitted she did not know how the other candidates performed during their lessons or interviews. See id. at 26. She also admitted that she did not know of any advantages that other candidates received in preparing or presenting lessons and that she did not "have any opinion on whether they're competent or not. I don't know them well enough." Id. at 25.

3

After observing and interviewing each candidate, the committee discussed its impression of them. See Scoutelas Dec. [D.E. 23-3] ¶ 8. Specifically, the committee considered:

- Qualifications on paper
- Actual training in CFA programs
- Ability to teach high-quality lesson consistently
- Ability to contribute positively to grade 3 and the Lower School
- Ability to maintain healthy parent relationships
- Professional appearance and poise

Id. Boyer composed a Candidate Comparison Chart ("the chart") that "reflect[ed] the committee's input on each of the candidate's competency in each of the categories referenced above." Id. at ¶ 9; see Scoutelas Ex. A [D.E. 23-3] 6–7. The chart shows that McWane was the unanimous "[f]irst choice" of the committee. Id. at 6. The chart also contains rankings of each candidate's competency in a given category on a scale of 1 to 3. See id. at 6–7. McWane ranked higher than Major in every category except "Qualifications on paper." Id. On that, McWane received a 2 while Major received a 3. See id. at 6. The chart also confirmed Major's self-assessment of her lesson: "Pacing was off . . . Kids not on task . . . No clear expectations . . . Engaged kids in beginning but then lost them." Id. at 6–7. Scoutelas declares that the committee did not recommend Major because "she was not the best candidate for the job." Scoutelas Dec. at ¶ 11. However, Scoutelas also stated that Major was the committee's second choice. See id. at ¶ 10. The committee recommended to Don Berger ("Berger"), CFA Head of School, that CFA hire McWane. See id.; Berger Dec. at ¶ 19.

Between April 16 and 17, 2018, Berger interviewed each candidate. See id. Major's interview with Berger lasted 20 minutes and she came with a checklist of items to discuss. See Major Dep. at 26. The two "talked a little bit about what [Major] did at St. Mary's or what [she] did as third grade and how [she] felt [that she] can scaffold kids," among other things. Id. According to Major, "it was a overall very nice interview, went very well." Id. As for Berger, he states that he

4

"never gave [Major] any indication whether she would be offered the position or not," Berger Dec. at ¶ 20, and Major confirms that she received no feedback. See Major Dep. at 26–27. Berger decided to hire McWane after interviewing the candidates. See Berger Dec. at ¶ 19.

On April 20, 2018, Major approached Boyer and asked whether she had heard anything about the job. See Major Dep. at 27. Boyer told Major that she "did not get the job." Id. After a silence, Boyer said: "Your lesson plan wasn't that good . . . . Katherine was a better fit . . . ." Id. Major proceeded to walk out to her classroom, saying nothing to Boyer. See id. "I was very upset," stated Major. Id. Major emailed Caryn Boland ("Boland"), CFA Human Resources Manager, and asked to meet. See id.; Boland Dec. at ¶¶ 2, 5. After emailing Boland, Major notified Theresa DiBernardo, a CFA teacher, that she did not receive the job. See Major Dep. at 28. According to Major, DiBernardo responded that "[t]here's bad people here. You didn't get the job because of your age." Id. Before Boland could set up a meeting, Major "walked off the job without providing notice and without absence approval." Boland Dec. at ¶ 5; see Berger Dec. at ¶ 22; Major Dep. at 27–28. According to Major, Major never returned to CFA. See Major Dep. at 28, 30. CFA attempted to contact Major, but to no avail. See id. at 30; Berger Dec. at ¶ 23; Boland Dec. at ¶ 6. Major did not return CFA's emails or phone calls after leaving on April 20, 2018. See id. at 30; Berger Dec. at ¶ 23; Boland Dec. at ¶ 6. When she left, Major had been under contract to work the 2018–2019 school year as a teacher's assistant. See Berger Dec. at ¶ 24; Major Dep. at 30; Boland Dec. at ¶ 7.

On August 7, 2018, Major filed a charge of discrimination against CFA with the Equal Employment Opportunity Commission ("EEOC"). See Major Dep. Ex. 7 [D.E. 23-4] 80. In her EEOC charge, Major stated:

> I worked for [CFA] for most of school year 2017–2018 as a Part-Time Teacher.
>
> On April 20, 2018, I resigned after I was passed over for a Full-time Teacher position. The selectee, Ms. Kathryn McWane, who is much younger than me, was selected for the position, in spite of my superior qualifications and over 15 years of experience. Ms. Susan Boyer informed me that I was not selected for the position because my lesson plans were 'not very good'; however, she had provided good

5

feedback on her observations and even wrote a letter of recommendation.

> I believe I have been discriminated against because of my age, 59, in violation of the Age Discrimination in Employment Act of 1967, as amended.

Id. The EEOC issued a "no cause" determination and a right-to-sue letter. See Major Dep. at 32. On January 16, 2019, Major filed suit. See [D.E. 1].

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference

upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

Major makes two claims under the ADEA. First, Major alleges that CFA discriminated against her based on age by failing to promote her to a third grade teacher position. See Compl. [D.E. 1] ¶¶ 11–19. Second, Major alleges that CFA constructively discharged her. See id.

The ADEA prohibits an employer from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish an ADEA claim in two ways. First, an employee may produce direct evidence showing that an employer's conduct was motivated by age discrimination. See, e.g., Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009); Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019); Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004). Second, an employee may proceed under the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). See Westmoreland, 924 F.3d at 725–26; Mereish, 359 F.3d at 334; Smith v. Flax, 618 F.2d 1062, 1066–67 (4th Cir. 1980).

The McDonnell Douglas framework includes three steps: "(1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216 (4th Cir. 2016). The McDonnell Douglas framework applies to age discrimination claims under the ADEA. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141–42 (2000); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310–13 (1996); Westmoreland, 924 F.3d

7

at 725; Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006) (en banc).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the adverse employment action was "for a legitimate, nondiscriminatory reason." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). This burden is one of production, not persuasion. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509-11 (1993); Westmoreland, 924 F.3d at 725. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc) (quotation omitted), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013); see, e.g., Reeves, 530 U.S. at 143; Westmoreland, 924 F.3d at 726; King v. Rumsfeld, 328 F.3d 145, 150-54 (4th Cir. 2003). A plaintiff can do so by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." Mereish, 359 F.3d at 336 (quotation omitted); see Reeves, 530 U.S. at 147.

The court assumes, without deciding, that plaintiff has alleged a prima facie case under the McDonnell Douglass framework. See Guessous, 828 F. 3d at 216. As for pretext, the court does not sit to decide whether CFA in fact discriminated against Major because of her age. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279-80 (4th Cir. 2000). Rather, the court focuses on whether Major has raised a genuine issue of material fact as to pretext under Reeves and its Fourth Circuit progeny. Under Reeves and its Fourth Circuit progeny, a plaintiff "may not simply show the articulated reason is false." Laber, 438 F.3d at 430-31. She "must also show that the employer discriminated against [her] on the basis of age." Id. at 431. In certain cases, however, the factfinder may infer illegal discrimination from the articulated reason's falsity. See id.; Rowe v. Marley Co., 233 F.3d 825, 830

8

(4th Cir. 2000).

CFA has asserted a legitimate, nondiscriminatory reason for not promoting Major: McWane was the most qualified candidate. See, e.g., Scoutelas Ex. A [D.E. 23-3] 6; Berger Dec. at ¶ 25; cf. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 189 (4th Cir. 2004) (recognizing that hiring or promoting a better qualified candidate is a legitimate, non-discriminatory reason for hiring or promoting someone). No rational jury could find CFA's explanation was false and that the real reason for not hiring Major was her age.

In opposition, Major cites Cooper v. Southern Co., 390 F.3d 695 (11th Cir. 2004), overruled on other grounds by Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006), for the proposition that she "can successfully demonstrate that she was the victim of age discrimination since the disparity in experience is 'substantially superior.'" [D.E. 24] 3; cf. Mereish, 359 F.3d at 336. This argument fails. When analyzing an employee's qualifications for a particular job, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 960–61 (4th Cir. 1996) (quotation omitted); see King, 328 F.3d at 149; Flax, 618 F.2d at 1067; Henry v. Vaughn Indus., LLC, __ F. Supp. 3d __, 2020 WL 1542091, at *4 (E.D.N.C. Mar. 31, 2020). "In a failure to promote case, the plaintiff must establish that she was the better qualified candidate for the position sought." Evans, 80 F.3d at 960. CFA believed McWane's qualifications to be superior to Major's qualifications, and age was not a factor in the hiring decision. See Berger Dec. at ¶ 25. Major's opinion of her own qualifications compared to McWane does not create a genuine issue of material fact as to age discrimination. See Bryant v. Bell Atlantic Md., Inc., 288 F.3d 124, 135 (4th Cir. 2002); Vaughn, 2020 WL 1542091, at *5 (collecting cases). Accordingly, Major's failure-to-promote claim fails, and the court grants summary judgment to CFA concerning Major's failure-to-promote claim under the ADEA.

B.

Major also alleges constructive discharge. See Compl. ¶¶ 11–19. To prove a constructive

discharge claim, a plaintiff must show that (1) an employer acted deliberately to induce resignation and (2) the employee's working conditions were so intolerable that a reasonable person would have resigned. See Burns v. AAF-McQuay, Inc., 96 F.3d 728, 733–34 (4th Cir. 1996); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353–54 (4th Cir. 1995); Webster v. Town of Warsaw, 66 F. Supp. 3d 706, 708–09 (E.D.N.C. 2014). These elements are the same in the context of an ADEA claim. See, e.g., Bristow v. Daily Press, Inc., 770 F.2d 1251, 1254–56 (4th Cir. 1985). The working conditions must be "so intolerable that a reasonable person would have felt compelled to resign." Pa. State Police v. Suders, 542 U.S. 129, 147 (2004); see Honor, 383 F.3d at 186–88. "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" do not constitute objectively intolerable conditions. Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (quotation omitted); see Bristow, 770 F.2d at 1255 (stating that an employee "is not . . . guaranteed a working environment free of stress"). "Because the claim of constructive discharge is so open to abuse by those who leave employment [voluntarily], [the Fourth Circuit] has insisted that it be carefully cabined." Honor, 383 F.3d at 187 (quotation omitted).

Major's constructive discharge claim fails procedurally and substantively. Procedurally, an EEOC charge "serves a vital function in the process of remedying an unlawful employment practice." Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 407 (4th Cir. 2013). It "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005). Accordingly, "[i]n any subsequent lawsuit alleging unlawful employment practices under Title VII [and the ADEA], a federal court may only consider those allegations included in the EEOC charge." Balas, 711 F.3d at 407. Major did not mention constructive discharge in her EEOC charge. See Major Dep. Ex. 7 [D.E. 23-4] 80. Thus, this omission procedurally bars the court from considering this claim. See Balas, 711 F.3d at 408–09.

10

Alternatively, even viewing the record in the light most favorable to Major, no rational jury could find that CFA constructively discharged Major. Rather, Major walked off the job. See Boland Dec. at ¶ 5; see Berger Dec. at ¶ 22; Major Dep. at 27–28. CFA's working conditions were not intolerable by any account, and Major only left after CFA failed to promote her for the third grade teacher position. Cf. Major Dep. at 25–26. "[T]he denial of a single promotional opportunity is insufficient to create an intolerable working environment." Taylor v. Va. Union Univ., 193 F.3d 219, 237–38 (4th Cir.1999) (en banc), abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). Moreover, discovery yielded no evidence demonstrating that CFA intended to force Major to resign. Instead, the opposite is true. CFA did not want Major to quit and made attempts to contact her after she left. See Berger Dec. at ¶ 26; Boland Dec. at ¶ 6; Major Dep. at 30. Accordingly, the court grants summary judgment to CFA concerning Major's ADEA constructive discharge claim.

III.

In sum, the court GRANTS CFA's motion for summary judgment [D.E. 20]. CFA may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 26 day of June 2020.

JAMES C. DEVER III
United States District Judge